## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| Ethan B., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 21-cv-50014 |
| v. | ) | |
| | ) | Magistrate Judge Margaret J. Schneider |
| Kilolo Kijakazi, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Ethan B. ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income. The parties have filed cross motions for summary judgment. [17, 24]. As detailed below, Plaintiff's motion for summary judgment [17] is denied and the Commissioner's motion for summary judgment [24] is granted.

### BACKGROUND

A. Procedural History

On November 30, 2018, Plaintiff filed an application for supplemental Social Security income under Title XVI of the Social Security Act and applications for child's insurance benefits based on disability on a deceased number holder and on a disabled number holder under Title II of the Social Security Act. R. 13. He alleged a disability beginning on October 25, 2017. *Id.* The Commissioner denied his application on March 1, 2019, and upon reconsideration on October 2, 2019. R. 144–78. Plaintiff filed a written request for a hearing, R. 181. On August 18, 2020, a hearing was held by Administrative Law Judge ("ALJ") Nicole Quandt where Plaintiff, Plaintiff's mother Christina B., and vocational expert Diane Regan appeared and testified. R. 37–61. Plaintiff was represented by counsel. *Id.*

On September 1, 2020, the ALJ issued her written opinion denying Plaintiff's claims for disability insurance benefits. R. 13–31. Plaintiff appealed the decision to the Appeals Council and the Appeals Council denied Plaintiff's request for review. R. 1–6. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [6]. Now before the Court are Plaintiff's motion for summary judgment [17] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [24].

---

[1] Kilolo Kijakazi has been substituted for Andrew Saul. Fed. R. Civ. P. 25(d).

B.  The ALJ's Decision

The ALJ conducted the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since October 25, 2017, when Plaintiff alleges his disability arose. R. 16. At step two, the ALJ found that Plaintiff suffered from the severe impairments of autism spectrum disorder, depression, anxiety, and post-traumatic stress disorder ("PTSD"). *Id*. The ALJ found that these impairments more than minimally limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. R. 17.

Before moving to step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform a full range of work at all exertional levels; perform simple, routine, and repetitive tasks not at a production rate pace; make simple work-related decisions; and perform simple changes in a work setting; but could never interact with the public. R. 20 At step four, the ALJ found that Plaintiff had no past relevant work. R. 29. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that Plaintiff could perform, including sorter, packer, and laundry laborer. R. 30. For these reasons, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from October 25, 2017 to September 1, 2020, the date of the decision. *Id*.

**STANDARD OF REVIEW**

The Court reviews the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla." *Wright v. Kijakazi*, No. 20-2715, 2021 WL 3832347, at *5 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). "Whatever the meaning of 'substantial' in other contexts, the Supreme Court has emphasized, 'the threshold for such evidentiary sufficiency is not high.'" *Id*. (quoting *Biestek*, 139 S.Ct. at 1153). The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

The Court is obligated to "review the entire record, but [the Court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility. [The Court's] review is limited also to the ALJ's rationales; [the Court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). "An ALJ need not mention every piece of medical evidence in her opinion, but she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676

F.3d 586, 592 (7th Cir. 2012). The Court will only reverse the decision of the ALJ "if the record compels a contrary result." *Gedatus*, 994 F.3d at 900 (citations and quotations omitted).

## DISCUSSION

Plaintiff argues that this matter should be remanded because the ALJ (1) failed to sufficiently account for Plaintiff's limitations in pace, persistence, and concentration and in interacting with others in her RFC determination; (2) improperly discounted the opinion of a treating medical provider when conducting her paragraph B listing analysis; and (3) did not support her paragraph C listing analysis by substantial evidence.

Plaintiff argues the ALJ failed to account for the state agency consultants' moderate limitations in concentration, pace, and persistence in both her hypothetical questions to Diane Regan, the vocational expert and in her ultimate RFC findings. "Both the hypothetical posed to the [vocational expert] and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record…[including] deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citations and quotations omitted). "[A]n ALJ must 'orient the [vocational expert] to the totality of a claimant's limitations.' including 'deficiencies of concentration, persistence and pace.'", *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)). The ALJ is not, however, required to use the same "'specific terminology' in all cases." *Moreno*, 882 F.3d at 730 (quoting *O'Connor-Spinner*, 627 F.3d at 619). "[A]n ALJ's hypothetical omitting the terms 'concentration, persistence and pace' [may stand]" when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner*, 627 F.3d at 619.

At the hearing, the ALJ asked Regan, the vocational expert, to "[p]lease consider a hypothetical person with the claimant's age and education[: n]o exertional limitations with the following non-exertional limitations[: l]imited to simple, routine, repetitive tasks not at production rate pace, for example, no assembly line work[; l]imited to simple work-related decisions; simple changes in the work setting; and no interaction with the public." R. 58. Regan testified that "[a]t the medium, unskilled level," that hypothetical individual could work as a sorter, a packer, or a laundry laborer. R. 58–59. She testified that in any of these positions a person could only be off task for "[u]p to 15%" of the workday and that "[a]nything beyond that is work preclusive." R. 59. She further stated that at these positions a person could consistently have one absence per month and that any consistent additional absences would be work preclusive. *Id*. On examination by Plaintiff's counsel, Regan testified that a need for frequent redirection to work tasks outside of an initial orientation period would not be consistent with competitive employment and that an individual's inability to deal appropriately with redirection from supervisors "would most likely result in loss of job." R. 60.

When completing mental RFC assessments, state agency medical consultants work within the paragraph B framework which considers a "claimant's impairments in the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." *See Timothy H. v. Kijakazi*, No. 20 C 581, 2022 WL 4079433, at *3 (N.D. Ill. Sept. 6, 2022). In considering the

3

paragraph B criteria, the ALJ must "evaluate the effects of [a claimant's] mental disorder on each of the four areas of mental functioning based on a five-point scale consisting of none, mild, moderate, marked, and extreme limitation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F). Within this paragraph B framework, a "[m]oderate limitation" means the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(c); *Jason B. v. Kijakazi*, No. 22 C 1850, 2023 WL 1992188, at *6 (N.D. Ill. Feb. 14, 2023) ("In 2017, the Commissioner amended the regulations to actually offer, for the first time, a definition of 'moderate'."); *Tina F. v. Kijakazi*, No. 420CV00096DMLSEB, 2021 WL 4488162, at *5 (S.D. Ind. Sept. 15, 2021) (noting this definition only applies to cases filed after January 17, 2017).[2] "To satisfy the paragraph B criteria, [a claimant's] mental disorder must result in extreme limitation of one, or marked limitation of two, paragraph B areas of mental functioning." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2). The mental RFC assessments used by the state agency psychological consultants consist of both a "checklist" in which they indicate their opinion as to the claimant's level of limitation in respect to the four broad areas and several sub-areas and a narrative section in which the consultants apply their "checklist" finding and any other findings into a statement of the claimant's capabilities. When considering consultant opinions, "[t]he ALJ must consider whether the consultants' narrative RFC assessments 'adequately encapsulate[d] and translate[d]' the checklist." *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (quoting *Varga*, 794 F.3d 809, 816 (7th Cir. 2015))

On February 11, 2019, Gayle Williamson, PsyD, completed a mental RFC assessment based on her review of Plaintiff's medical record. R. 69–71. In regards to concentration, persistence and pace, Dr. Williamson found Plaintiff to be moderately limited in his ability to carry out detailed instruction; maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, or "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. 69. In regards to social interactions, she found Plaintiff to be markedly limited in his ability to interact appropriately with the general public and moderately limited in his ability to get along with coworkers or peers without distracting them and in his ability to maintain socially appropriate behavior. R. 70. Dr. Williamson also found Plaintiff to be moderately limited in his ability to respond appropriately to changes in the work setting and to set realistic goals or make plans independently. *Id*. Dr. Williamson explained in the narrative section of his assessment that:

> The clmt retains the mental capacity to understand, remember and concentrate sufficiently in order to carry out 1-2 instructions/tasks and to sustain efforts for a normal work period. Clmt could make simple work decisions. Clmt could interact and communicate with others sufficiently in a work setting with no contact with the public. Clmt could adapt to simple routine changes with gradual introduction and pressures in the work environment. R. 70.

On September 29, 2019, Donna Hudspeth, PsyD., affirmed on reconsideration Dr. Williamson's findings in their entirety including her narrative assessment. R. 120–21.

In her decision, the ALJ stated that both Dr. Williamson and Dr. Hudspeth opined that

---

[2] Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5341732, ( Sept. 26, 2016) (eff. Jan. 17, 2017).

Plaintiff had moderate limitations in his abilities to interact with others; to concentrate, persist, or maintain pace; and to adapt or manage himself. R. 28. She correctly characterized both consultants as finding Plaintiff "capable of understanding, remembering, and concentrating sufficiently to carry out 1-2 step instructions/tasks and to sustain efforts for a normal work period"; "mak[ing] simple work decisions"; "interact[ing] and communicat[ing[ with others sufficiently in a work setting with no contact with the public"; and "adapt[ing] to simple, routine changes with gradual introduction and pressures in the work environment." *Id.* As the ALJ found both consultants' opinions to be "supported by explanation and . . . consistent with the longitudinal record," she concluded that both were persuasive. *Id.*

The ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of this symptoms [to be] inconsistent with the overall record." R. 27. In support of this conclusion, the ALJ cited "the 2020 mental status findings reveal[ing that] his depressed mood and anxious mood were both mild," "normal mental status findings," and his ability to independently attend community college, drive, shop, and perform household tasks. *Id.* The ALJ ultimately concluded "that the evidence established moderate limitation, in regard to, concentrating, persisting, or maintaining pace." R. 19.

In his argument, Plaintiff cites several cases in which the Seventh Circuit found that ALJs erred by failing to incorporate moderate limitations in concentration, persistence, and pace into their hypothetical questions to vocational experts. *See Varga*, 794 F.3d at 814. *See also DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("An ALJ need not use 'specific terminology,' but we have "repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'") (quoting *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014)); *Moreno*, 882 F.3d at 730 (finding the ALJ erred because the hypothetical question to the vocational expert failed to explicitly account for moderate limitations in concentration, persistence, and pace and the ALJ's reference to "simple work instructions and to routine, low-stress work" did not constitute a reasonable accommodation for those moderate limitations). However, each of these cases predate *Pavlicek v. Saul*, the first case in which the Seventh Circuit applied the definition of "moderate limitation" added in 2017. 994 F.3d at 783. S*ee Amalia C. v. Kijakazi*, No. 1:21-CV-01212, 2023 WL 2711609, at *8 (N.D. Ill. Mar. 30, 2023).

In *Pavlicek*, the plaintiff argued just as Plaintiff does here that the state agency consultants' assessment "rating him as 'moderately' limited in areas related to maintaining concentration and working at a constant pace" conflicted with their narrative assessment finding them capable of performing simple, repetitive tasks at a consistent pace. 994 F.3d at 783. The Seventh Circuit reasoned that since "[a] 'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair[,]' [which] in ordinary usage does not mean 'bad' or 'inadequate' . . . a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id.* at 783 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1); *Jason B.*, 2023 WL 1992188, at *6 ("In this case, as in *Pavlicek*, the ALJ accommodated plaintiff's moderate limitation on CPP, at least in part, by restricting him to "simple, repetitive and routine tasks."); *Amalia C.*, 2023 WL 2711609, at *8 ("Here, as in *Pavlicek* and *Jason B.*, the ALJ accommodated Claimant's moderate limitation in CPP, in part, by restricting her to 'simple, routine, repetitive tasks,' and therefore met the governing standard.") (internal citations omitted).

Based on this reasoning, the Seventh Circuit concluded that "the ALJ reasonably relied on the narrative RFC because it was in fact consistent with the 'moderate' checklist ratings." *Pavlicek*, 994 F.3d at 783.

The Seventh Circuit's reasoning in *Pavlicek* is equally applicable here.[3] As in *Pavlicek*, the state agency psychological consultants used the narrative discussion to apply their checklist findings into a practical explanation of Plaintiff's capabilities and the ALJ relied on that narrative discussion in her own RFC analysis. *See id*. And as in *Pavlicek*, the ALJ accommodated the Plaintiff's moderate limitations in consistence, pace, and persistence, by restricting him to "simple, routine, repetitive tasks" and simple work-related decisions in an environment with limited changes and without fast-paced production; *See id*. at 781; *see Amalia C*., 2023 WL 2711609, at *8.

Plaintiff similarly argues that the ALJ did not sufficiently account for Plaintiff's limited ability to interact with others in her RFC analysis, because while she limited Plaintiff's RFC to never interacting with the public, she did not limit his interactions with supervisors or co-workers. Again Plaintiff asserts that in reaching her conclusion, the ALJ erred by adopting the opinions of the state agency psychological consultants expressed in narrative, instead of independently incorporating their checklist findings into her hypothetical to the vocational expert. The psychological consultants found Plaintiff to be markedly limited in his ability to interact with the general public, but only moderately limited in his abilities to interact with coworkers and to maintain socially appropriate behavior. R. 70, 120–21. In the narrative section of their assessment, both concluded that Plaintiff "could interact and communicate with others sufficiently in a work setting with no contact with the public" R. 70, 121. In doing so, they interpreted their checklist findings into an unambiguous statement about Plaintiff's workplace capacity. The ALJ did not err in relying on this more practical statement of Plaintiff's limitations narrative in crafting his hypothetical questions to the vocational expert or ultimately determining Plaintiff's RFC. *See Baldwin v. Berryhill*, 746 F. App'x 580, 584 (7th Cir. 2018) (finding that the ALJ did not err in ignoring a consultant's finding that plaintiff was moderately limited in concentration and pace where the consultant's narrative assessment stated that plaintiff "had the concentration and pace 'necessary to fulfill a normal workday'"); *Patrick C. v. Saul*, No. 20 C 608, 2020 WL 6287370, at *5 (N.D. Ill. Oct. 27, 2020) (finding that the ALJ did not err in "follow[ing] a line of cases wherein an ALJ simply adopts the narrative of restrictions offered by a medical expert as accommodating a moderate limitation in concentration, persistence, and pace."). To find otherwise, would be to effectively require the ALJ to reject the psychological consultants' interpretation of their checklist findings in favor of the ALJ's own non-expert interpretation.

Next, Plaintiff argues that the ALJ erred in finding that Plaintiff had only "moderate" or "mild" limitations regarding the paragraph B criteria, because the ALJ improperly discounted the opinion of Misty DeHaven, A.P.N., Plaintiff's medical provider. In her assessment of Plaintiff's mental health limitations, DeHaven stated that Plaintiff has been diagnosed with mild major depressive disorder, post-traumatic stress disorder, generalized anxiety disorder, and autism spectrum disorder; and undergone treatment for two years consisting of therapy sessions every other week and medication monitoring appointments every 12 weeks. R. 647. In evaluating

---

[3] Despite Defendant's reliance on *Pavlicek* in her defense brief, Plaintiff did not attempt to distinguish *Pavlicek* in his reply. [25].

Plaintiff's capacity based on the paragraph B criteria, she circled both "marked" and "extreme" regarding his limitation in understanding, remembering, and applying information; circled "marked" regarding his limitation in interacting with others; and circled both "moderate" and "marked" regarding his limitations in both concentrating, persisting, or maintaining pace; and in adapting or managing himself. R. 647–48. When applying these limitations to how Plaintiff could be expected to perform on a sustained basis over the course of a workweek, she opined that he was seriously limited but not precluded from understanding, remembering, and carrying out detailed instructions and had a limited but satisfactory ability to understand, remember, and carry out short instructions. R. 648. She rated his ability to adapt to change in a routine work setting as between limited and seriously limited. *Id*. She rated his ability to remember work-like procedures as limited but satisfactory within a routine structure, but seriously limited when adaptation was necessary. *Id.* She rated his ability to accept instructions and respond to constructive criticism from supervisors as limited but satisfactory. *Id*. She opined that Plaintiff was not limited in his ability to make simple work-related decisions or take appropriate precautions in the face of hazards. *Id*. While she estimated that Plaintiff would be absent from work or unable to complete the workday three days per month and off-task for 25% of an eight-hour workday, she did not find Plaintiff unable to perform any of the workplace activities described in the form. *Id*.

In her decision, the ALJ described DeHaven as finding that Plaintiff had a moderate limitation in his ability to maintain concentration, persistence, or pace, and marked limitations for the other three paragraph B criteria. R. 29. The ALJ found DeHaven's opinion to be unpersuasive, because while supported by explanation it was "inconsistent with the longitudinal record." *Id*. As an example to illustrate this inconsistency, the ALJ submitted that "although [Plaintiff] had significant difficulty with his first semester [of community college], his overall GPA was a 3.00." *Id*. Plaintiff contends that the ALJ mischaracterized DeHaven's findings regarding the paragraph B criteria and failed to provide sufficient support for finding DeHaven's opinion unpersuasive.

Where DeHaven circled multiple levels of limitations in her opinion, the ALJ deemed her to have found the lesser of the two: "moderate" and "marked". Plaintiff contends that these circles should have instead been interpreted by the ALJ as "moderate to marked" and "marked to extreme." Plaintiff's preferred interpretation does read intuitively as likely better aligned with DeHaven's intended meaning, but her opinion was somewhat ambiguous. The form completed by DeHaven provides instructions on how to approach the five levels. It defines "a marked limitation" as meaning "several activities or functions are impaired, or only one is impaired, but is significant enough to interfere seriously with the patients [sic] ability to function independently, appropriately, effectively, and on a sustained basis." R. 647. The other levels are defined in term relative to that definition: "Moderate means less than marked, and Extreme means more than marked." *Id*. Given the directions on the form and regulations regarding paragraph B criteria, DeHaven's circling of multiple levels is somewhat contradictory. By circling both moderate and marked, DeHaven—according to the definition provided in the form instructions—indicated that the Plaintiff's limitations are simultaneously both "less than marked" and "marked."

Further discussion of the reasonableness of the ALJ's characterization of DeHaven's opinion is unnecessary, because even if the ALJ erred in mischaracterizing DeHaven's opinion, that error is harmless. As "the harmless error standard applies to judicial review of administrative decisions," the Court will not remand a case to the ALJ if "convinced that the ALJ will reach the

same result." *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022). The ALJ did not find DeHaven's opinion to be persuasive, because the ALJ found the extent of DeHaven's opined limitations to be inconsistent with the record. If the ALJ had interpreted DeHaven's opinion as claiming more extensive limitations, than the ALJ would have been even less inclined to find DeHaven's opinion persuasive.

Plaintiff also takes issue with the ALJ's characterization of his GPA as part of her analysis in discrediting DeHaven's opinion. In the spring semester of 2020, Plaintiff earned a term GPA of 3.00, while maintaining a cumulative GPA of 2.08. R. 649. In that semester, he enrolled in three classes for a total of 10 credits. *Id*. Though he did not complete his four-credit College Algebra course, he earned a B in both of his three credit courses: "Intro to Information System" and "Fund of Speech Communication". *Id*. The ALJ repeatedly referred to the 3.00 GPA incorrectly as Plaintiff's cumulative GPA in her discussion of the paragraph B criteria, R. 18–19, and when citing it as evidence discrediting DeHaven's opinion. R. 29.[4] These errors are harmless. While there is a difference between a 2.08 cumulative GPA and 3.00 cumulative GPA, Plaintiff's ability to maintain a C, rather than a B average in his community college coursework is not so much more indicative of a "marked" limitation under the paragraph B criteria as to be expected to change the ALJ's decision. *See Hightshoe v. Kijakazi*, No. 22-2359, 2023 WL 3531473, at \*3 (7th Cir. May 18, 2023) (7th Cir. 2023) ("Before tax dollars are available to support someone applying for benefits, it must be clear that the claimant has a severe impairment and cannot perform virtually any kind of work.").

Plaintiff challenges ALJ's misidentification of Plaintiff's overall GPA as part of a broader argument that his GPA does not paint a complete picture of his academic record. Plaintiff argues that he struggled in community college and that his medical records provide evidence of these difficulties. Plaintiff contends that the ALJ failed to adequately consider this evidence and over relied instead on the misleading GPA. In his brief, Plaintiff cites several notes in the medical record as documenting these struggles. [17, at p. 14]. On November 28, 2017, Plaintiff reported that he had been discharged from a math class because he missed the first week due to illness and would have to retake the class. R. 447. On April 11, 2018, he reported that he had been advised to withdraw from an English course. R. 474. On February 25, 2019, he reported that "he was potentially going to fail one of his classes but his professor corresponded that he could potentially pull off a passing grade." R. 553. On March 5, 2019, he reported that he had a tutor helping him with his coursework. R. 556. These examples may demonstrate that Plaintiff faced challenges, but they are not irreconcilable with the ALJ's decision.

Ultimately, it is the ALJ's job to weigh the evidence and her decision to not credit DeHaven's opinion was supported by substantial evidence. The ALJ need not "mention every piece of evidence," so long as she does not "ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012)). While the ALJ does not discuss Plaintiff's academic difficulties in her paragraph B analysis or in discrediting of DeHaven's opinion, she does discuss them in her review of Plaintiff and Christina B.'s written submissions and testimony. *See* R. 21–22. The ALJ found Plaintiff's GPA to be an example of why DeHaven's opinion was inconsistent with the record, not a sole,

---

[4] In her thorough discussion of the record, the ALJ correctly referred to 3.00 as a term GPA and 2.08 as the cumulative GPA. R. 24.

independent rationale for discounting DeHaven's opinion. The ALJ was not required to repeat her discussion of Plaintiff and Christina B.'s testimony in discussing DeHaven's opinion or analyze every mention of his academic performance in the medical record. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("To require the ALJ to repeat such a discussion throughout his decision would be redundant.").

Finally, Plaintiff argues that the ALJ's paragraph C analysis was not supported by substantial evidence. Paragraph C provides alternative criteria to paragraph B for determining whether a claimant's condition satisfies a listing category. 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.00 (G)(2)(a). Under the paragraph C criteria, a claimant's mental disorder qualifies as "serious and persistent" in a listing category if the claimant has a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both ongoing medical treatment and only marginal adjustment. 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.00 (G)(2). The regulation defines "marginal adjustment" as meaning "that [a claimant's] adaptation to the requirements of daily life is fragile; that is, [the claimant has] minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [the claimant's] daily life." 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.00 (G)(2)(c). An ALJ should consider that a claimant has "achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of [the claimant's] symptoms and signs and to deterioration in [the claimant's] functioning; for example, [the claimant] have become unable to function outside of [the claimant's] home or a more restrictive setting, without substantial psychosocial supports." 20 C.F.R. Pt. 404, Subpt. P., App. 1, 12.00 (G)(2)(c).

In explaining why Plaintiff did not meet the paragraph C criteria, the ALJ stated that while the record "documented two years of medical treatment of mental impairments" it "did not reveal any emergency department or hospitalization for mental health impairment." R. 19. She concluded that the record fails to show that "the claimant resided in a highly structured setting or that it was ongoing with diminished symptoms and signs of the mental disorder." *Id*. Plaintiff reads this discussion of emergency care and hospitalization as referring to the medical treatment prong of paragraph C and argues that this prong does not require emergency care or hospitalization. However, the ALJ did not designate her discussion of hospitalization as confined only to the medical treatment prong. Emergency care and hospitalization are relevant to marginal adjustment, since under that prong the ALJ must consider whether a claimant can function outside of a restrictive environment. The ALJ also included in her paragraph C analysis a discussion of those activities that Plaintiff performs both inside and outside of the home which can fairly be read as indication of his ability to function outside of the home and adopt to changes in his environment. *Id*.

Plaintiff argues that the record shows that he has difficulty adjusting to new situations and the ALJ cherry-picked facts to support her opinion. Plaintiff points, for example, to his treating physician's note dated May 11, 2018 stating that Plaintiff described his anxiety related to school as "crippling." [*See* 17, at p. 17]; R. 597. However, in the sentence that immediately follows, the treating physician wrote that "after processing, he reports that despite having anxiety he is able to accomplish the tasks he needs to get done." *Id*. It is not the Court's role to reweigh the evidence. The ALJ's explanation when read in concert with her more detailed discussion of the record elsewhere in her decision is sufficient to support her paragraph C determination by substantial

evidence. *See Curvin*, 778 F.3d at 650 (finding that a single paragraph of listing analysis was sufficient as the RFC "discussion provide[d] the necessary detail to review the ALJ's step 3 determination in a meaningful way").

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [17] is denied and the Commissioner's motion for summary judgment [24] is granted.

Date: 06/07/2023                    ENTER:

*Margaret J. Schneider*
United States Magistrate Judge

10